UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------x
In re                             :    Chapter 11
                                  :
THE JOLT COMPANY, INC.,           :    Case No. 09-22531
                                  :
            Debtor.               :    Judge John C. Ninfo, II
                                  :
                                  :
---------------------------------------------------x

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT
TO 11 U.S.C. § 1112 TO DISMISS ITS CHAPTER 11 CASE**

TO:   HONORABLE JOHN C. NINFO, II
      UNITED STATES BANKRUPTCY JUDGE

The Jolt Company Inc., the debtor and debtor in possession in the above case (the "Debtor"), by and through its undersigned counsel, hereby files this motion (the "Motion") for entry of an order pursuant to 11 U.S.C. § 1112. In support of the Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a) and 1112 of title 11 of the United States Code (the "Bankruptcy Code").

**BACKGROUND**

2.   The Debtor filed a voluntary Chapter 11 petition on September 28, 2009 (the "Petition Date).

3. Prior to the petition Date, the Debtor executed an exclusive 2007 Can Supply Agreement1 with Rexam Beverage Can Company ("Rexam"). According to the terms thereof, Jolt was obligated to purchase 90 million 23.5 ounce resealable cans between January 2007 and December 2009. The 2007 Can Supply Agreement further obligated Jolt to pay a capital reimbursement expense to Rexam in the event Jolt failed to reach the Minimum Production.

4. Under the terms of the 2007 Can Supply Agreement, Jolt was required to purchase the Minimum Production of 90 million cans by December 31, 2009 or Rexam could assess a Capital Reimbursement Fee, calculated by Rexam to be approximately $2.1 Million. To date, Jolt has purchased only 27 million cans of the 90 million cans required by the Minimum Production.

5. The 2007 Can Supply Agreement also permits Rexam to sell unused production capacity and credit those sales to Jolt's Minimum Production. It is unclear whether Rexam appropriately credited sales towards Jolt's Minimum Production.

6. During the summer of 2009, a dispute arose with Rexam under the 2007 Can Supply Agreement. Specifically, Rexam and Jolt dispute whether appropriate credit has been given to Jolt for sales of unused production capacity. Additionally, Rexam claims to hold approximately 7 million cans, or the equivalent of $2 Million in inventory, allegedly produced at Jolt's request.2

7. As of the Petition Date, disputes with Rexam were unresolved. Rexam appeared to hold a junior secured interest in all of jolt's assets for the outstanding amount of $510,000.

---

1 Capitalized terms not defined herein shall have the same meaning ascribed to them in the Affidavit of Robert Clamp in Support of First Day Motions (the "First Day Affidavit").

2 The officers of Jolt, at the time, C.J. Rapp and Lowell Patric, have denied that any orders for such cans were ever placed and Rexam has never produced copies of orders for the cans.

8. The Office of the United States Trustee ("UST") was unable to form an Official Creditors' Committee.

9. Neither the UST nor creditors in this proceeding have supported maintaining the case for purposes of having a publicly advertised 363 sale, and supporting the financing of the debtor as an ongoing business to the date of the sale.

10. With regard to its pending motion for a final order regarding financing, the Debtor has received the qualified approval from the largest unsecured creditor in the proceedings, Rexam, but has been unable to obtain the approval of the UST, despite providing substantial supporting materials with regard to the proposed budget. More recently, Rexam has terminated all negotiations with the Debtor and has filed its Motion to Convert Case to Chapter 7 ("Rexam's Motion to Convert").

11. Without an agreed goal of a robust, publicly advertised 363 sale, and without agreement with regard to the necessary financing to maintain the operations through the date of a sale and closing, no purpose is served with regard to retaining this proceeding.

12. The Debtor has incurred, in good faith, $300,000 in Chapter 11 fees and administrative expenses since the Petition Date relying on the negotiations leading to the Interim Financing Order. This loss diminishes the estate and was incurred while the Debtor was trying to obtain the support of the UST and the creditors with regard to holding a sale pursuant to section 363 and the financing tied to that goal.

**RELIEF REQUESTED AND THE BASIS THEREFOR**

13. 11 U.S.C. § 1112(b) states, inter alia, "[T]he Court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause."

14. Pursuant to 11 U.S.C. § 1112(b)(4)(A), the term "cause" includes, inter alia, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Moreover, the list of grounds for dismissal or conversion found in 11 U.S.C. § 1112(b) is not exhaustive. *In re AdBrite Corp.*, 290 B.R. 209 (Bankr. S.D.N.Y. 2003). The court may consider other factors as they arise and use its equitable powers to reach an appropriate result in individual cases. *Id*. Thus, the determination of cause for conversion or dismissal is a matter of discretion with the court. *In re Kerzman*, 63 B.R. 393 (Bankr. D.N.D. 1986).

15. It is appropriate in the circumstances to dismiss these proceedings. The senior secured lender should have the opportunity to sell the assets of Jolt as an on-going operation to enhance value as provided pursuant to the laws of the State of New York. Enhanced value through continued operations includes processing pending customer orders, permitting the conversion of partially processed inventory into finished goods, maximizing the use of container and shipping inventory, maintaining customer and distributor relationships, and providing relief for customers who are experiencing severe leakage issues with respect to Jolt inventory.

16. It is important to note that the affiant supporting Rexam's Motion to Convert, Claude Marbach, not an expert in the valuation of production facilities or trademarks, acknowledges, in his layman opinion, that the value of a trademark is tied to the production output and uses the example of a valuation of $2.5 million for a trademark related to 10 million units of the trademarked product, such as Jolt's current production. (Mr. Marbach does not explain why the value of such units, or whether such units are sold profitably, are not relevant to a valuation.) Therefore, Mr. Marbach confirms that the pending "stalking horse" bid is within the appropriate value of Jolt, in his opinion. The Debtor has consistently maintained that a

robust, well advertised sale would result in a much higher valuation. Rexam's affiant does not explain how a Chapter 7 proceeding, with production going to zero units, would be an enhancement. The affiant talks of changing product line and methods of marketing as a means for increasing the value of the trademark (all strategies introduced over the past year by current Jolt management), but fails to explain how such enhancements can be achieved within a Chapter 7 proceeding with no working capital.

17. Since these proceedings no longer serve a productive goal for the creditors of the estate, and since a chapter 7 proceeding without funding would only increase costs to the constituents of the estate, dismissal is in the best interests of the parties who may pursue whatever claims or remedies in the appropriate venue.

18. WHEREFORE, the Debtor respectfully requests that the Court enter an order dismissing this case.

Respectfully submitted,

Dated: October 21, 2009

/s/ *William I. Kohn*
William I. Kohn (NY No. 4442273)
Stuart A. Laven, Jr. (NY No. 4446720)
BENESCH, FRIEDLANDER,
 COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
(216) 363-4500 (Telephone)
(216) 363-4588 (Facsimile)
wkohn@beneschlaw.com
slaven@beneschlaw.com

*Proposed Counsel for The Jolt Company, Inc.,
Debtor and Debtor in Possession*

# CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that the foregoing *Motion to Dismiss* was served on October 21, 2009, via electronic mail on the parties listed below:

**Emigrant Business Credit Corp.**
rowlandso@ebcc.net

**Emigrant Capital Corp.**
waltersk@emigrant.com

**Rexam Beverage Can Company**
Joshua.Markus@rexam.com
dconaway@slk-law.com
lmorin@mccmlaw.com

**Office of the United States Trustee**
Kathleen.d.schmitt@usdoj.gov

**C.J. Rapp**
wrosenbaum@woodsoviatt.com


                                      /s/ William I. Kohn, Esq.